RECEIVED
IN LAKE CHARLES, LA
JUL 23 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **DOCKET NO. 2:06 CR 20089-017** |
| **VS.** | : | **JUDGE MINALDI** |
| **FLETCHER FREEMAN, JR.** | : | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Presently before the court is a Motion to Transfer Proceeding Under Rule 21(b) [doc. 493]. The Government has filed an Opposition [doc. 498].

Facts

On March 11, 2009, the defendants Fletcher Freeman, Jr. and Bruce Stinson were charged in the Western District of Louisiana in an eight (8) count Superseding Indictment with Conspiracy to Possess with Intent to Distribute Five (5) Kilograms or more of Cocaine and Other Controlled Substances (Count 1) and Aiding and Abetting the Possession with Intent to Distribute Five Hundred (500) Grams or more of Cocaine (Count 3). The original indictment was returned on August 9, 2006, charging sixteen (16) defendants, all of whom were originally residents of the Southern District of Texas. The Superseding Indictment was returned on March 11, 2009, charging ten (10) defendants.

The United States asserts that it intends to introduce evidence at trial to establish that defendants Freeman and Stinson were drug traffickers in Georgia who were receiving cocaine and marijuana from a drug trafficking organization headed by Francisco Chapa-Duran, who is fugitive from the United States and is believed to be residing and operating his illicit enterprise from Mexico.

All of the remaining defendants named in the indictment are either Mexican or Mexican- American citizens who resided in the Rio Grande Valley of Texas and acted as smugglers into the United States and/or couriers of controlled substances for Chapa-Duran or temporarily resided in Georgia to off-load drug loads, distribute the drugs to Stinson and Fletcher, and receive drug proceeds for Chapa-Duran. All of the remaining defendants are either in federal custody in the Western District of Louisiana or are believed to be fugitives in Mexico.

Law

Fed.R.CRim.P. 21(b) provides that "[f]or the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district."

Proper venue is required by Article III, Section 2 of the United States Constitution[1] and by the Sixth Amendment,[2] as well as Rule 18 of the Federal Rules of Criminal Procedure.[3] *United States v. Granados,* 117 F.3d 1089, 1091 (8th Cir.1997)(citing U.S. Const. Art. III, § 2; U.S. Const. amend. VI; Fed.R.Cr.P. 18).

Title 18, United States Code, Section 3237(a) provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or

---

[1] Article III, Section 2 provides that "The trial of all Crimes ... shall be held in the State where the said crimes shall have been committed...." U.S. Const. Art. III, § 2.

[2] The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI.

[3] Rule 18 provides that "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed...." F.R.Cr.P. 18.

completed." § 3237(a). Along these lines, it is well-settled that venue is proper in a conspiracy case in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators. *Hyde v. United States, 225 U.S.* 363 (1912). In furtherance of the conspiracy in this case, defendant allegedly received drugs that originated in South Texas and traveled through Louisiana, ending up in Georgia, where Freeman was to sell them in violation of Title 21, United States Code, Section 846.

Freeman seeks a change of venue for trial of the conspiracy counts "for the convenience of the parties and witnesses and in the interests of justice," pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. Defendant contends that the Middle District of Georgia provides a more convenient forum for him.[4]

The grant of a transfer under Rule 21(b) is a matter of discretion for the district judge. *United States v. Roberson,* 124 Fed. App'x 860 (5th Cir. 2005). The United States Supreme Court has enumerated several factors to "guide" this discretion, including: (1) location of ... defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business ...; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district ... involved; and (10) any other special elements which might affect the transfer. *Platt v. Minnesota Mining & Mfg. Co.,* 376 U.S. 240, 243-44 (1964).

The court shall consider each of these factors in turn:

---

[4] Freeman did not move to sever, but the court could not grant a change of venue for Freeman without severing him from the co-defendants. There is no assertion that the Middle District of Georgia would be more convenient for anyone other than Freeman and Stinson.

The defendant is currently incarcerated in the Calcasieu Parish Detention Center. Although he resided in and was arrested in Georgia, this does not support moving the trial to Georgia.

Freeman asserts that witnesses favorable to his defense are all located in Georgia. While this is true, this is a case involving many defendants and the location of the events at issue spread from South Texas to Georgia. The documents needed are primarily in Louisiana. According to the Government's opposition brief, the United States has approximately 173 witnesses and 467 exhibits that it intends to introduce at trial, of those approximately 21of the witnesses reside in Georgia. Further, approximately 14 of the witnesses from Georgia will testify concerning the activity alleged in Overt Act of Count 1 and Count 4, in which defendants Freeman and Stinson were not involved. Approximately 105 of the government's witnesses are from Texas and Louisiana. Overt Acts a, b, c, d, g, h, I, j, k, n, p, and r of Count 1 and Count 5 all relate to incidents that allegedly transpired in the Southern District of Texas but could have impacted the Middle District of Georgia. Overt Acts e, f, and l of Count 1 relate to activities in Georgia but the Government contends will be proven by testimonial witnesses in Louisiana and Texas and hotel records from Georgia and Alabama. Counts 2 and 3 allegedly arise from traffic stops in Louisiana and were not committed in Georgia. Approximately 8 codefendants have entered cooperation plea agreements and will testify at trial, and are either in federal custody or awaiting sentencing at their residences in Texas.

The Government points out that since the defendant is indigent, the expense of Freeman's witnesses appearance at trial will be bourne by the Government.

In support of his motion, Freeman asserts that his counsel of choice is located in Georgia and is prohibited from representing Freeman because of the distance involved. The location of counsel

presents a quandary. Freeman states that he has not one, but two retained attorneys in Georgia, yet he has stated that he is indigent and needs appointed counsel in Louisiana. Either he does not actually qualify for appointed counsel or, he qualifies because he no longer has adequate funds, in which case circumstances would not permit him to keep retained counsel in Georgia.

The events charged in the first count of the superseding indictment allegedly occurred in Louisiana and South Texas. The allegations contained in the second and third counts arise from traffic stops in Louisiana of drugs bound for Georgia. The entirety of the charges have a nexus to South Louisiana. The defendant's business will not be disrupted as he will remain incarcerated whether he is in Louisiana or Georgia.

All the parties are currently located in South Louisiana.

The place of trial is clearly accessible in South Louisiana. The Government asserts that the docket in the Middle District of Georgia is extremely congested and there is no assurance that a courtroom would be available for this trial.

Applying these factors to the case at hand, it is clear that transfer to Georgia is not necessary for the convenience of the parties or witnesses nor in the interests of justice. Freeman is presently incarcerated in Louisiana; a significant number of witnesses reside in states other than Georgia, including Louisiana and Texas; the conspiracy originated within Texas; defendant's court-appointed counsel as well as the United States Attorney's Office prosecuting the case are located in the Western District of Louisiana; and no other factors indicate that transfer of the case to the Middle District of Georgia would make more efficient use of limited judicial resources.

In *United States v. Noland,* 495 F.2d 529, 534 ( 5th Cir. 1974) the defendant sought a change

of venue. He argued that he was charged with a related crime in the District of Colorado; that his principal counsel was there; that he and his parents, who financed his defense, resided there; and that his schooling there would be interrupted by trial in Texas. Noland also alleged that witnesses in Colorado would be inconvenienced by trial in Texas. The Fifth Circuit determined that these reasons were not sufficient to show an abuse of discretion in the District Court's denying the motion to transfer the trial from Texas to Colorado.

Finally, Freeman argues that denying him a change of venue and transfer to Georgia deprives him of his Sixth Amendment right of be represented by the attorney of his choice. The Fifth Circuit has repeatedly held, however, that "[t]he Sixth Amendment ... does not guarantee an absolute right to the counsel of one's choice." *United States v. Paternostro,* 966 F.2d 907, 912 (5th Cir.1992); *Nixon v. Epps,* 111 Fed.App'x. 237, 252, 2004 WL 2166271, 13 (5th Cir. 2004). Freeman's conclusory allegations that his Sixth Amendment rights are being violated are not persuasive.

For the foregoing reasons, defendant's motion for change of venue will be DENIED.

Lake Charles, Louisiana, this 23 day of ~~June~~ July, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE