RECEIVED
IN LAKE CHARLES, LA

AUG 22 2013

TONY R. MOORE, CLERK
BY_____
                    DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **DOCKET NO. 2:06 CR 20089-17**<br>**DOCKET NO. 2:13 CV 00571** |
| **VS.** | : | **JUDGE MINALDI** |
| **FLETCHER FREEMAN, JR.** | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Presently before the court is a Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct a Sentence [Doc. 949] filed by the defendant, Fletcher Freeman. The motion has been opposed by the Government. [Doc.961]   The defendant did not file a reply. This matter is fully briefed and ready for disposition.

## PROCEDURAL HISTORY

On March 11, 2009, Freeman and nine co-defendants were charged in an eight-count superseding indictment.[1] Freeman was charged substantively in Count 1 and Count 3. Count 1 charged conspiracy to possess with intent to distribute cocaine hydrochloride and other controlled substances in violation of 21 U.S.C. §§ 846 and 841(b)(a)(A), and Count 3 charged possession with intent to distribute 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[2]

Freeman along with one co-defendant, Robert Zamora, pled not guilty and opted for a

---

[1] *See* Superseding Indictment, pp. 1-3, [Doc. 398].

[2] *Id.*

1

jury trial.[3] The government presented evidence that connected Freeman and Zamora to the Chapa–Duran drug smuggling conspiracy.[4] During the four day trial, forty-one witnesses testified for the government, mostly law enforcement and members of the Chapa–Duran organization.[5] During the trial, Freeman attempted to enter a guilty plea to Count 1.[6] At that time, this Court found Freeman reluctant to plead guilty and refused to go forward with the Rule 11 hearing.[7] At the close of the government's case, Freeman and Zamora moved for Judgment of Acquittal arguing that the evidence against them was insufficient.[8] Both motions were denied and the jury found Freeman and Zamora guilty on all counts.[9] Freeman was sentenced to concurrent terms of 210 months for each count followed by a five-year term of supervised release.[10]

Freeman timely filed a direct appeal and argued for a mistrial alleging that a witness had inadvertently mentioned that Freeman had a "criminal history" during the trial. The Fifth Circuit denied Freeman's appeal and affirmed his conviction.[11] Freeman timely petitioned the Supreme Court for a writ of certiorari. His petition was denied on March 19, 2012.[12]

---

[3] *See* Initial Appearance [Doc.451].

[4] *See* Trial Tr. Vol. I-V [Doc. 786-90].

[5] *Id.*

[6] *See* Guilty Plea Tr., pp. 5-8 [Doc. 960].

[7] *Id.*

[8] *See* Trial Tr. Vol. IV, pp. 131-138; Vol. VI, p. 2 [Doc. 791 and 792].

[9] *See* Trial Tr. Vol. VI, p. 2 [Doc. 791 and 792].

[10] *See United States v. Zamora*, 661 F.3d 200 (5th Cir. 2011) cert. denied, 132 S. Ct. 177 (U.S. 2012).

[11] *Id.*

[12] *See Freeman v. United States*, 132 S. Ct. 1771 (2012).

**FACTS**

From 2002 until 2006, Francisco "Poncho" Chapa-Duran operated a drug smuggling enterprise from Reynosa, Mexico which smuggled cocaine to various cities in the United States including Houston, Texas and Columbus, Georgia.[13] In Mexico, Chapa–Duran and his associates hid drugs in vehicles and made arrangements for the smuggling operation.[14] A distinguishing feature of the Chapa–Duran conspiracy was the way in which the organization meticulously modified the vehicles to evade detection at the border.[15] Members of the conspiracy would modify the dashboards and battery compartments of automobiles to outfit them for the storage of drugs.[16] After the drugs were concealed in the vehicles, couriers drove the car from Mexico to Houston or Columbus.[17] The couriers received several thousand dollars to drive the vehicles into the United States, with the amount of money generally determined by the length of the trip and the duration of their service to the organization.[18] When the drugs were transported to Houston, the vehicle would normally be left in the Galleria Mall parking lot, where a local dealer would retrieve the drugs from the car.[19] The deliveries to the local dealer in Georgia varied, often involving numerous intermediaries and receivers.[20]

---

[13] *See* Trial Tr. Vol. I, p. 25; Vol. II. 27,72 [Doc. 786-87].

[14] *See* Trial Tr. Vol. I, p. 10-15 [Doc. 786].

[15] *Id.*

[16] *Id.*

[17] *Id.* Vol. II, pp. 9-10, 14.

[18] *Id.* Vol. I, pp 169-72.

[19] *Id.* at p. 26.

[20] *Id.* at 26-38.

Many of the individuals involved in this conspiracy pled guilty to drug trafficking and were sentenced to jail time for their roles. As a result, many cooperated with the government investigation and testified against senior level management in the organization. The government proved that Freeman and Bruce Stinson were central figures in the Georgia branch of the Chapa–Duran conspiracy.[21] Freeman was responsible for receiving and distributing the shipments of cocaine in Georgia. During trial, a number of government witnesses, a majority of whom were participants in the Chapa–Duran conspiracy, testified that Freeman was a central figure in the Georgia branch of the operation and oversaw the shipment of cocaine in Columbus.[22]

Miguel Puente, a courier, testified that he made approximately ten trips to Georgia delivering cocaine to Freeman.[23] During each trip, Puente allegedly transported three to four kilograms of cocaine at a time to Freeman.[24] After the delivery, Puente collected payment from Freeman and returned to Mexico.[25] In addition to Puente, numerous members of the Chapa–Duran conspiracy testified to delivering cocaine to Freeman in a similar manner.[26] These included Brian Greening, Justin Green, Jessica Rosales, Laila Olea, and Tiffany Pens.[27]

Further, Julio Cortez, Tomas Silva, and Jose Gutierrez testified in details about their role

---

[21] *Id.* at 13.

[22] *Id.* at 11-16.

[23] *Id.* at 49-63.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *See* Trial Tr. Vol. I, p. 25; Vol. II. 27,72 [Doc. 786-87].

in the conspiracy and all confirmed that Freeman was a central figure in the conspiracy.[28] Cortez, who lived in the Columbus area, testified that he was responsible for receiving cocaine shipments in Georgia for Freeman.[29] Cortez regularly received two or three cars a week carrying approximately three kilograms of cocaine.[30] Cortez met the couriers, took the cars from them, removed the cocaine from the secret compartment, and delivered the drugs to Freeman.[31] After delivering the drugs to Freeman, Cortez received money from Freeman which he concealed in the secret compartments for delivery back to Mexico.[32] Silva, who eventually replaced Cortez, corroborated Cortez's testimony and admitted to managing the removal and delivery of cocaine for Freeman in Columbus for two years after Cortez's departure.[33]

The government also presented testimony from witnesses who were not involved in the conspiracy. Ronny Bellard, a tow truck operator purportedly towed a courier's broken truck from Lafayette, Louisiana to Columbus, Georgia.[34] Gutierrez, a handyman, took delivery of the truck in Columbus.[35] At the time Gutierrez ran errands for Silva and Freeman including counting money and removing drugs from the cars.[36] Bellard testified that Freeman gave Gutierrez money

---

[28] *See* Trial Tr. Vol. II, p. 13 [Doc. 782].

[29] *Id.* at 128-35.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 152-162.

[34] *See* Trial Tr. Vol. III, p. 22-29 [Doc. 782].

[35] *Id.*

[36] *Id.*

to pay for the towing service. Bellard later witnessed Gutierrez removing cocaine from the towed vehicle.[37] Gutierrez also corroborated Bellard's account and testified that he was involved in the drug operation.[38]

On March 11, 2009, both Roberto Zamora and Freeman were charged in a superseding indictment in Count 1 and Count 3 with conspiracy to possess with intent to distribute cocaine and other controlled substances.[39] Zamora was also charged with possession of a firearm in furtherance of a drug trafficking crime, and Freeman was charged with possession with intent to distribute cocaine.[40] The charge in Count 3 was included in both the original indictment and the superseding indictment.[41] The original indictment did not include Freeman as a defendant; Freeman was subsequently added to the superseding indictment in the conspiracy charged in Count 1 and the substantive offense charged in Count 3.[42]

## APPLICABLE LAW

The only issues cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues, and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).

Collateral review is fundamentally different from and may not replace a direct appeal.

---

[37] *Id.*

[38] *Id.* at 9-16.

[39] *See* Superseding Indictment, pp. 1-3, [Doc. 398].

[40] *Id.*

[41] *Id.*

[42] *Id.*

*United States v. Frady,* 456 U.S. 152, (1982); *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir.1991) *(en banc).* Even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler,* 37 F.3d 1131, 1133 (5th Cir.1994) ( citing *Shaid,* 937 F.2d at 232); *United States v. Walker,* 68 F.3d 931, 934 (5th Cir.1995).

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *See Murray v. Carrier,* 477 U.S. 478, 495-96, (1986); *Bousley v. United States,* 523 U.S. 614, 620-2, (1998); *United States v. Ward,* 55 F.3d 412, 414 (5th Cir. 1995). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *See Shaid,* 937 F.2d at 232; *see also United States v. Williams,* No. 05-30014-01, 2008 WL 5532099, *2 (W.D.La. 12/04/2008).

A criminal defendant who fails to raise an available issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Mills v. United States,* 36 F.3d 1052, 1055 (11th Cir. 1994). A prisoner who collaterally attacks his conviction can establish cause for his procedural default "if he can show that some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule or that his attorney's performance failed to meet the [*Strickland*] standard for effective assistance of counsel." *Reece v. United States,* 119 F.3d 1462, 1465 (11th Cir. 1997) (internal quotations omitted); *see also Strickland v. Washington,* 466 U.S.

668, (1984). A showing of a fundamental miscarriage of justice can be made if a prisoner can establish actual innocence. *Id.* at 1465 n.5. To do so, the prisoner must demonstrate that, "in light of all of the evidence; it is more likely than not that no reasonable juror would have convicted him." *Jones v. United States,* 153 F.3d 1305, 1308 (11th Cir. 1998) (internal quotations and citations omitted).

Freeman argues ineffective assistance of counsel in his §2255 motion. Evaluating whether counsel was ineffective is subject to the two-pronged test set forth in *Strickland,* 466 U.S. 668 at 104. The test requires first, "a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and second, a showing that the deficient performance so prejudiced the defense that the defendant was deprived of a fair and reasonable trial. *Uresti v. Lynaugh,* 821 F.2d 1099, 1101 (5th Cir. 1987) (quoting *Strickland,* 466 U.S. at 687); *United States v. Gibson,* 985 F.2d 212, 215 (5th Cir. 1993). The burden that *Strickland* imposes on a defendant is severe. *Proctor v. Butler,* 831 F.2d 1251, 1255 (5th Cir. 1987).

One way to satisfy the deficiency prong of the *Strickland* test is for the defendant to demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *Martin v. McCotter,* 798 F.2d 813, 816 (5th Cir. 1986), *cert. den.,* 107 S. Ct. 934, (1987). The defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the sixth Amendment." *Strickland,* 466 U.S. at 687. In applying the first prong of the test, a court should "eliminate the distorting effects of hindsight" and evaluate the attorney's conduct from the attorney's "prospective at the time." Because of the difficulties in making such an evaluation, the

8

court should strongly presume that the attorney's conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant may overcome this presumption by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally, competent assistance." *Id.* at 960; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

Given the almost infinite variety of trial techniques and strategies available to counsel, the court must be careful not to second- guess legitimate strategic choices which may now, in retrospect, seem questionable or even unreasonable. The Fifth Circuit has stressed that, "great deference is given to counsel, 'strongly presuming that counsel has exercised reasonable professional judgment.'" *Id.* at 816 (quoting *Lockart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986), *cert. den.*, 479 U.S. 1030, (1987)).

In evaluating counsel's alleged ineffective assistance "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine such confidence in the outcome. *Id.* at 694. In fact, the defendant must demonstrate that the attorney's deficient actions were "so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994. Unreliability and unfairness do not "result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). To meet this prejudice prong, the defendant must affirmatively prove, not merely allege,

9

prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th cir. 1994). Counsel cannot be ineffective for failing to raise a meritless claim. *Sones v. Hargett*, 61 F.3d 410, 415 n. (5h cir. 1995). Prejudice generally exists only if the defendant demonstrates that he would have received less jail time. *United State v. Grammas*, 376 F.3d 433, 436 (5th Cir. 200).

## ANALYSIS

In his petition, Freeman argues that his counsel was ineffective before, during and after the trial on the following grounds:

(1) Failure to move for dismissal of Count 3 of the superseding indictment;

(2) Failure to request mistrial when another attorney pointed out Freeman to witness Bellard prior to Bellard's testimony;

(3) Failure to advise Freeman of the relevant conduct portion of the guidelines;

(4) Failure to facilitate dialogue with the government;

(5) Failure to properly question witness Thomas;

(6) Failure to permit Freeman to testify;

(7) Failure to discuss the benefits of the safety valve sentence reduction;

(8) Failure to notify the court that Freeman was eligible for a minor role sentence reduction; and

(9) Failure to withdraw as Freeman's counsel when hostility led to lack of communication between counsel and the defendant.

### I. Failure to Seek Dismissal of Count Three of the Superseding Indictment

Freeman first asserts that trial counsel was ineffective for failure to move for dismal of

Count 3 of the superseding indictment because it was not within the statue of limitations.[43] Count 3 charged possession with intent to distribute more than five hundred (500) grams of cocaine.[44]

In his brief, Freeman cites the relevant portion of the indictment and statute which establish that Freeman allegedly committed the offense "on or about the 4th of September 2003;" Freeman was subsequently charged with the offense on March 11, 2009.[45] Generally, the statute of limitations for 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) offense is three years. Therefore, Freeman argues that trial counsel should have requested dismal of the charge.[46]

The filing of pretrial motions is considered "trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984). Decisions by counsel concerning strategy are considered with great deference. *Id.* In evaluating counsel's performance, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See *Strickland*, 466 U.S. at 689. The burden is on the defendant to prove that the motion would have at least resulted in a change in his prison sentence. See *Deville*, 21 F.3d at 659.

Freeman's trial counsel avers that he contemplated filing a motion to dismiss, however he notes that the motion would have been futile since the original indictment contained the same charge as the superseding indictment.[47] The only difference between the two indictments is that the defendant was subsequently added.

---

[43] Def.'s. Br. at 16-18.[Doc. 949].

[44] *See* Superseding Indictment, pp. 1-3, [Doc. 398].

[45] *Id.*

[46] Def.'s. Br. at 16.[Doc. 949].

[47] Govt's. Br. at 14-18.[Doc. 961].

Freeman failed to cite any precedent to support his argument that a motion to dismiss would have been valid when that the defendant's name was added to the indictment after the statue of limitations. Similarly, this Court has not found any precedent to suggest that such a motion would have been granted. The government correctly points out that there are no cases interpreting the statue of limitations as it relates to a charge included in an original indictment but that subsequently added a defendant to the charge in a superseding indictment brought after the statute of limitations. Therefore, trial counsel acted reasonably in declining to pursue a motion to dismiss because his decision was based on well informed realities of the law.

Trial counsel also noted that Count 3 had no effect whatsoever on the defendant's conviction or the guidelines classification for his sentence.[48] At trial, there was ample evidence to suggest that the overall amount of drugs trafficked to Freeman was not affected by the 500 grams of cocaine charged in Count 3. Most significantly, Freeman was also found guilty of trafficking 50 kilograms of cocaine. In light of the 50 kilogram charge faced by Freeman, the 500 grams charge is miniscule and likely did not alter Freeman's prison term.

This claim therefore fails under the first and second prong of *Strickland* because it cannot be said that defense counsel acted unreasonably in failing to file a meritless motion to dismiss. Accordingly, reasonable jurists could not debate whether this issue should have been resolved in a different manner.

## II. Failure to Request Mistrial

During some point in the trial, Freeman believes that he observed a co-conspirator's

---

[48] *Id.*

attorney point out Freeman to the witness Bellard.[49] The defendant advised his counsel that he noticed an attorney "pointing him out as if to indicate who he was" before Bellard testified.[50] Purportedly, Freeman advised his attorney at the time to request a mistrial.[51] The record shows that counsel brought Freeman's objection to the Court's attention at the conclusion of the government's case.[52] The Court opined that such an objection should have been raised "before, during, or directly after his testimony," and declined to take any further action.[53]

Freeman now argues that witness Bellard's in-court identification was impermissibly suggestive because the identification occurred after an attorney pointed at him during a conversation with Bellard.[54] Freeman believes that he was prejudiced because Bellard may not have known Freeman.[55] Freeman concedes that counsel did object to Bellard's testimony, but argues that it was not timely because counsel brought the objection to the Court's attention after the close of the government's case.[56] Freeman further offers two cases to support that counsel can be ineffective for failing to object to witness testimony. *See Tomlin v. Myers*, 30 F.3d 1235 (9th Cir. 1994); *United States v. Wade*, 388 U.S. 218 (1967).

Despite counsel's failure to object timely, Freeman nonetheless must prove that there is a

---

[49] Def.'s. Br. at 23.[Doc. 949].

[50] *Id.* at 23-25.

[51] *Id.*

[52] *Id.*

[53] *See* Trial Tr. Vol. IV, p. 120 [Doc. 785].

[54] Def.'s. Br. at 26.[Doc. 949].

[55] *Id.*

[56] *Id.*

reasonable probability that the trial outcome would have been different. *Green v. Johnson*, 160 F.3d 1029, 1040 (5th Cir. 1998). In the instant manner, Freeman was not prejudiced as a result of Bellard's testimony.

Additionally, the two cases cited by the defendant are distinguishable from the case at bar. The question presented in *Tomlin* and *Wade* was whether the defense counsel's failure to challenge the illegal identifications made during a photo line-up prejudiced the defendant. In *Tomlin*, a witness was unable to identify the defendant as her attacker in a photo line-up even after a police detective motioned to the defendant's photo. *Tomlin*, 30 F.3d 1235. The witness eventually identified the defendant in a line-up three years after the attack. *Id*. at 1235-36. The only other evidence presented at trial was a serological analysis that established the defendant had a similar biological trait as the attacker, and that only 32% of the population shared the biological trait. *Id*. at 1236-3. Similarly, in *Wade*, the sole identification made of the defendant was during an illegal line-up. *Wade*, 388 U.S. 218. In both cases the courts concluded that counsel's failure to challenge evidence gathered at an illegal line-up could have materially impacted the outcome of the trial. At both trials, the identification was the crucial piece of evidence. In sum, both cases hinged on the witness testimony in question. Therefore, it would materially affect the outcome of the trial if it was struck from the evidence.

Conversely, the case at the bar is analogous to *Green*. Green alleged ineffective assistance of counsel because his attorney failed to object to a witness's testimony regarding Green's time on death row. *Green*, 160 F.3d at 1032. Green argued that the testimony painted him in a negative light. *Id*. The court dismissed the Green's claim noting the witness's testimony was not material because there was other overwhelming evidence that contributed to the verdict.

Other than the witness testimony in question, the government presented testimony from: (1) a forensic expert who testified to finding the defendant's finger prints on the murder weapon, (2) a doctor who testified to the nature of the victim's wounds, and (3) a bystander who placed Green at the scene of the crime. *Green,* 160 F.3d at 1032-35.

Freeman's argument is similarly not persuasive because Bellard's testimony was not material to the outcome of the trial. A number of witnesses at the trial testified about the defendant's role in the drug smuggling enterprise including Miguel Puente, Carla Rodriguez, Jessica Rosales, Tiffany Pena, Bruce Stinson, Julie Cortez, Tomas Silva, and Jose Guetierrez.[57] As such, the evidence against Freeman was "so overwhelming" that the testimony in question was unlikely to alter the outcome of the trial. *See Balderas v. United States,* 6:11CV414, 2012 WL 3544753 (E.D. Tex. Apr. 23, 2012) report and recommendation adopted, 6:11CV414, 2012 WL 3543491 (E.D. Tex. Aug. 15, 2012).

In the case at bar, Bellard identified the defendant in a photo line-up before trial. Thus, Bellard knew the identity of the defendant prior to his court testimony. Even if Bellard's testimony was stricken from the record, there was ample evidence to support the verdict. Accordingly, Freeman would not have received a significantly lower sentence, and therefore was not prejudiced.

## III. Failure to Explain the Relevant Conduct Portion of the Sentencing Guidelines

Freeman complains that counsel failed to explain the relevant conduct portion of the

---

[57] *See* Trial Tr. Vol. I, pp.49-56 (Miguel Puente); Vol. II, pp.24-25 (Carla Rodriguez); Vol. II, p.4 (Tiffany Pena); Vol. II, pp. 105-106 (Bruce Stinson); Vol. II, pp. 131, 136 (Julio Cortez); Vol. II, p. 153 (Thomas Silva); Vol. II, pp. 131, 136 (Julio Cortez); Vol. III, pp. 11 (Jose Guetierrez).

guidelines and how they would affect his overall sentence.[58]

In the instant matter, relevant conduct has no effect on the defendant's sentence. The defendant was offered a plea agreement that stated the amount of drugs attributable to him was 72-108 kilograms of cocaine. The defendant elected to decline the plea agreement. At trial, the defendant was found guilty of possession with intent to distribute fifty or more, but less than 150 kilograms of cocaine. Multiple witnesses testified that they delivered 50 to 108 kilograms of cocaine to the defendant. Thus, the defendant's sentence was based on actual, not relevant conduct. *See United States v. Vital*, 68 F.3d 114 (5th Cir. 1995).[59]

## IV. Failure to Facilitate Cooperation with the Government

Freeman argues that his counsel did not facilitate a dialogue with the prosecution.[60] According to Freeman, he informed counsel that he wished to cooperate with the government in order to mitigate his sentence.[61] Freeman claims that communication became increasingly fractured as a result of their differing theories on how to proceed, thus counsel refused to assist him.[62] According to Freeman, despite the numerous requests made to his attorney, that counsel failed to facilitate any conversations with the prosecution.[63] During trial preparations, Freeman advised Anita Brown, a family friend, to contact the case agent in order to offer Freeman's

---

[58] *See* Def.'s. Br. at 27-30.[Doc. 949].

[59] District courts are permitted to consider unadjudicated offenses which occur after the offense of conviction for sentencing purposes, but only if they are "relevant conduct" and in order for unadjudicated offenses to rise to the level of "relevant conduct," they must be part of the same course of conduct or common scheme or plan as the offense of conviction. *See United States v. Vital*, 68 F.3d 114, 118 (5th Cir. 1995).

[60] Def.'s. Br. at 30.[Doc. 949].

[61] *Id.*

[62] *Id.* at 30-31.

[63] *Id.*

cooperation with the investigation.[64] Brown avers that she contacted the case agent on multiple occasions and was notified that Freeman's counsel must initiate any dialogue between the case agent and Freeman.[65] Brown purportedly contacted counsel and relayed the message. Freeman contends that counsel did not make any effort to facilitate dialogue between him and the case agent, even after Brown purportedly relayed the case agent's message.[66]

The sole proof in support of the defendant's position is an affidavit from Brown in which she states that she approached the case agent and advised him on multiple occasions that Freeman wanted to cooperate with the investigation. Freeman offers no other corroboration than Brown's affidavits. Further, Brown's affidavit is deficient of any specific information concerning the time, place, or specifics of the purported conversation she had with the case agent. Conversely, the record indicates that counsel facilitated cooperation with the government and negotiated a plea agreement for Freeman. The record indicates that Freeman initially contemplated entering a plea agreement but instead aborted the plea agreement and opted for a trial.[67] The record also indicates that Freeman professed his innocence during the course of his incarceration and during the trial; he claimed to have no knowledge about the charges. Freeman continued to maintain his innocence after the trial, he filed a Motion for Judgment of Acquittal and for new trial and a Motion to Compel arguing his actual innocence and lack of involvement.[68]

---

[64] *Id.* at 31.

[65] *Id.*

[66] *Id.*

[67] *See* Guilty Plea Tr., pp. 5-8 [Doc. 960].

[68] *See* Motion to Compel [Doc. 619].

In light of the record, this Court must decline to find counsel failed to facilitate cooperation based solely on Brown's affidavits.

## V. Failure to Properly Cross-examine Witness

Freeman next argues that counsel's failure to properly cross examination witness James Thomas.[69] Thomas, who was the case agent, testified about Freeman's role in the organization. During cross-examination, Thomas mentioned that Freeman had "a criminal history" in the following exchange:

> "Q: Is it a fact that other authorities in Georgia investigated Mr. Freeman and rejected charges on him?
>
> A: I don't know. He's got—he's got a criminal history other than what he's been arrested for here. That's all I know.
>
> Q: He's never been convicted of anything, correct?
>
> A: Not that I know of, no, sir."

Freeman avers that Thomas' testimony disseminated misinformation about his character.[70] Further, Freeman contends that Thomas made the comments because counsel failed to properly question the witness.[71]

As noted previously, in order to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's conduct.

A review of the record demonstrates that Freeman was not prejudiced by the comments

---

[69] Def.'s. Br. at 32.[Doc. 949].

[70] *Id.* at 32-33.

[71] *Id.*

made by Thomas. The inadmissible testimony was isolated, only vaguely related to the alleged crime, and its prejudicial impact was limited by subsequent events. The inadmissible testimony was only vaguely related to the charges brought by the government in that it did not establish any specific conduct by Freeman. Instead, it only established that Freeman had "a criminal history." The testimony was isolated because the jury never heard anything of this criminal history after the witness mentioned it. *United States v. Paul*, 142 F.3d 836, 838 (5th Cir. 1998). In a four-day trial with forty-two witnesses, the testimony in question consists of only a small fraction of the evidence offered against Freeman. Finally, events subsequent to the inadmissible testimony limited its prejudicial impact. After the witness testified that Freeman had "a criminal history," he noted that Freeman had not been convicted of any crimes. The district court also instructed the jury that Freeman was on trial only for the conduct alleged in the indictment. *See Id.* (noting a similar instruction from the trial judge in affirming the district court).

Additionally, other evidence presented by the government was very strong and overwhelming. In such a case, even if the comments in question were never made, Freeman would nonetheless have been found guilty based on a plethora of other testimony. The government presented many witnesses who testified that Freeman was a major player in the Chapa–Duran drug trafficking organization, including several individuals who testified that they delivered drugs directly to Freeman. The overwhelming amount of testimony provided the jury with more than enough information to tie Freeman to the Chapa–Duran organization. *See United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998).

When considering all these facts, this Court cannot find a substantial likelihood that a fleeting reference to "a criminal history" had a substantial impact on the jury's verdict. Therefore,

we must decline to find that counsel was ineffective for failing to properly cross examine the witness.

## VI. Failure to Call the Defendant to Testify

Freeman contends that during pretrial preparation and the trial, he advised his attorney that he wanted to testify in his defense.[72] Freeman contends that as the trial was progressing, he was diligently preparing his testimony for and provided his written testimony to his counsel during trial.[73] At the close of the government's case, Freeman inquired about when he would be able to testify; at that time counsel informed Freeman that it was too late to testify.[74]

When a defendant argues that his counsel interfered with his right to testify, "[t]he appropriate vehicle for such claims is a claim of ineffective assistance of counsel." *Sayre v. Anderson,* 238 F.3d 631, 634 (5th Cir.2001); *United States v. Willis,* 273 F.3d 592, 598 (5th Cir.2001). Under the *Strickland* standard, "the decision whether to put a defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Mullins,* 315 F.3d 449, 453 (5th Cir.2002). Nevertheless, "it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." *Id.* Should a court find that a defendant's attorney acted deficiently by overriding his client's wish to testify, the court must conduct a separate inquiry into whether this deficiency resulted in prejudice to the defendant. *See Id.* at 456. This second inquiry, effectively the second prong of the *Strickland* test, must yield a "reasonable

---

[72] Def.'s. Br. at 33.[Doc. 949].

[73] Id. at 33-34.

[74] *Id.*

probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt" and that the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (citing *Strickland,* 466 U.S. at 687, 694-95).

Other than his conclusory allegation that his attorney denied him the opportunity to testify, Freeman offers no other details or allegations that illuminate how the decision for him not to testify was made. Freeman must provide the Court with something other than mere allegations. Freeman further does not provide the Court with any indication as to what his testimony might have been had he testified. *See .Sayre v. Anderson,* 238 F.3d 631, 635 (5th Cir. 2001). Finally, Freeman does not address the reasonableness of the countervailing tactical reasons that his attorney might have had for declining to call him to the stand. *See United States v. Watson,* 273 F.3d 599 (5th Cir. 2001).

These omissions are dispositive of this claim. Absent any evidence that the defendant's attorney thwarted the defendant's decision to testify or that this decision was unreasonable, and in light of the substantial deference afforded the attorney's strategic decision, Freeman cannot satisfy the first prong of the *Strickland* test.

## VII. Failure to Request the Safety Valve Provision

Freeman argues that counsel was also ineffective to after the trial; specifically in negotiating a favorable sentence.[75] According to Freeman, counsel failed to advise the defendant and the Court that the provision of the sentencing guidelines allowed him to receive a level two sentence reduction from his guideline line range.[76] Freeman contends that he met all five

---

[75] Def.'s. Br. at 37.[Doc. 949].

[76] *Id.* at 38.

requirements of the sentence reduction provision. Therefore, he qualified for a lower sentence from guideline 36 (188-235 months) to a guideline 34 (155 – 188 months).[77]

In order to demonstrate that he was prejudiced by his counsel's allegedly deficient performance, Freeman must show a reasonable probability that, but for his counsel's actions, he would have received a "significantly less harsh" sentence. *Daniel v. Cockrell,* 283 F.3d 697, 706 (5th Cir.2002). If he had pled guilty, Freeman would have faced at least 188 months in prison (the mandatory minimum for his crime). This sentence is notably less than the 210-month sentence that Freeman actually received.

It is not sufficient to allege that one may have received a lower sentence. Freeman must also prove that the sentencing court could (and would) have departed below the statutory minimum sentence. Freeman contends that he would have been eligible for a downward departure pursuant to 18 U.S.C. § 3553(f) and U.S. Sentencing Guidelines § 5C1.2. This "safety valve" provision permits a court to issue a sentence below the mandatory minimum if the defendant meets five criteria. Freeman must demonstrate (1) that he does not have more than one criminal history point; (2) that he did not use violence or threats of violence or possess a weapon during the offense; (3) that his offense did not result in death or serious bodily injury to any person; (4) that he was not an organizer or other major participant in the offense; and (5) that "not later than the time of the sentencing hearing, [he] has truthfully provided to the Government all information and evidence [he] has concerning the offense[.]"

Irrespective of the first three prongs of the safety valve provision, Freeman is unable to satisfactorily claim that he met the fourth and fifth prong. The safety valve sentence reduction is

---

[77] *Id.*

only available to a defendant who fully and truthfully provides the government "all information and evidence the defendant has concerning the offense that were part of the same course of conduct or of a common scheme of plan ...." Freeman provided indefinite and inconsistent statements concerning the extent of his knowledge of, and participation in, specific conduct relevant to the charged offenses. *See United States v. Edwards,* 65 F.3d 430, 433 (5th Cir.1995) (denying application of § 5C1.2 because the defendant provided conflicting accounts of the offense); *see also United States v. Ridgeway,* 321 F.3d 512, 516 (5th Cir.2003) (giving deference to credibility determinations made by the district court). Freeman therefore has failed to show that he truthfully provided the government with all pertinent information and evidence. *See* U.S.S.G. § 5C1.2(a)(5); 18 U.S.C. § 3553(f)(5); *United States v. Flanagan,* 80 F.3d 143, 146–47 (5th Cir.1996).

Further, Freeman did not admit to any portion of the offense and in his Motion to Compel filed after his conviction professed his innocence. The defendant would not have been eligible for a safety valve reduction because even today he maintains his innocence and "non-involvement in the charged offenses." Freeman would not have qualified for a § 5C1.2 downward departure, even if he had pled guilty. Thus, he was not prejudiced by his counsel's alleged ineffectiveness. The evidence at trial also arguably establishes that Freeman was a major participant in the charged offense, precluding application of the safety valve.

## VIII. Failure to Request a Sentencing Reduction for Playing a Minor Role

Freeman further avers that he was the least culpable of all the individuals in the conspiracy; as a result he was eligible for a sentence reduction as a minor participant.[78] After the

---

[78] Def.'s. Br. at 40.[Doc. 949].

trial, counsel failed to pursue a minor role sentence reduction. According to Freeman, "counsel merely sent the [presentencing report] to petitioner at the jail with another inmate and did not review the [presentencing report] with petitioner prior to sentencing."[79] During sentencing proceedings, the undersigned asked Freeman if he "had time to go over the presentence report" and Freeman replied "[y]es , your Honor."[80]

Pursuant to § 3B1.2, a district court may decrease a defendant's offense level by two levels if the defendant was a minor participant. An adjustment for a minor role applies to a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." § 3B1.2, comment. (n.5).

A District Court's technical application of the sentencing guidelines does not give rise to a constitutional issue cognizable under 28 U.S.C. § 2255. *United States v. Segler*, 37 F.3d at 1134; *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.1998). Accordingly, Freeman's claim the trial court erred in calculating the time under the sentencing guidelines is not cognizable under § 2255. *United States v. Coleman*, 3-97-CR-056-R, 2002 WL 1758179 (N.D. Tex. July 26, 2002).

## IX. Failure to Withdraw

In ground two of his motion, Freeman argues that his counsel was ineffective because counsel failed to withdraw as the attorney of record after communication broke down between the two.[81] Freeman makes numerous arguments which attempt to establish that counsel should have resigned. Construing Freeman's in a light favorable to the defendant, Freeman's withdrawal

---

[79] *Id.*

[80] Sentencing Tr., p. 2 [Doc. 791].
[81] Def.'s. Br. at 18-19.[Doc. 949].

24

claims rest primarily on three arguments counsel's (1) failure to investigate and prepare adequately for trial, (2) failure to consult with the defendant, and (3) failure to contact the prosecutor.[82]

### (a) Failure to Investigate and Prepare Adequately for Trial

Freeman argues that counsel refused to communicate with him and as a result was unable to prepare for trial.[83]

As mentioned previously, a court's review of counsel's performance is "highly deferential," and we "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Recognizing that in "failure to investigate" cases the temptation to rely on hindsight is strong, the Supreme Court stated that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 690-91. *Strickland* does not require this Court to defer to decisions that are uninformed by an adequate investigation into the controlling facts and law. *See Moore v. Johnson,* 194 F.3d 586, 615 (5th Cir.1999).

Defense counsel contests Freeman's allegations and avers that he took the proper steps to represent Freeman and was adequately prepared for trial. Counsel notes that the defendant and

---

[82] *Id.* at 18-23.

[83] Id. at 22.

his family refused to assist with trial preparation and withheld information regarding business records and alibi witnesses. Counsel negotiated a plea bargain agreement with the prosecution which was arguably fair. The record also indicates that counsel vehemently defended Freeman during the trial proceedings, making numerous objections and motions.

Freeman's main point of contention is that counsel did not file all the motions that Freeman requested.[84] Counsel did not refuse to honor all of Freeman's requests and filed several motions including a motion for change of venue, a motion for new trial, and a motion for judgment of acquittal. All of the motions were reviewed with the defendant in jail and all the motions were subsequently denied. Counsel did decline to file some motions but only after concluding that they were frivolous.

Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different defendant has failed to demonstrate deficient performance or actual prejudice. *See, e.g., Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir.2006) (holding that counsel was not deficient in failing to present a meritless argument); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir.1988) ( "Counsel cannot be faulted for failing to pursue meritless motions."); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir.1984) ("Counsel is not required to engage in the filing of futile motions.").

**(b) Failure to Consult with the Defendant**

Freeman next argues that his counsel failed to communicate with him about the charges and trial.[85] Counsel again disputes Freeman's representation of the events and states that the

---

[84] *Id*,. at 18-20.

[85] *Id*,. at 19-21..

defendant "assumed a very hostile posture" and had disregarded his counsel's advice to enter into a plea agreement.[86] The record shows that counsel met with the defendant on numerous occasions and communicated with him both verbally and in writing. Counsel had advised the defendant he could be convicted solely on the testimony of witnesses if those witnesses were found to creditable, and counsel outlined the Sentencing Guidelines and the possible prison sentences.

Other than a generalized allegation that "communication broke down," Freeman offers not other evidence or legal arguments which would entitle him to a remedy pursuant to § 2255.

### (c) Failure to Consult with the Prosecutor

Freeman alleges that counsel failed to consult with the prosecutor and negotiate on his behalf. This argument is virtually identical to Freeman's claim in Section IV of this opinion. As such, the court must decline this argument for the same reason stated above.

## CONCLUSION

Freeman has failed to show "cause" and "prejudice" for any of the claims raised in his habeas petition. For the reasons stated above, Freeman's Motion to Vacate, Set Aside, or Correct sentence will be denied.

Lake Charles, Louisiana, this 22 day of August, 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[86] Govt's. Br. at 15.[Doc. 949].